# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

ROSALIND SANTOROCCO,

    Plaintiff,

    v.                                     Civil Action No.  AW-08-3049

CHESAPEAKE HOLDING COMPANY, LLC
d/b/a WORLD TRAVEL SERVICE,

    Defendant.

******

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 16) in this claim arising from alleged violations of the Family Medical Leave Act ("FMLA"). The Court held a hearing with respect to this motion on May 25, 2010. For the reasons articulated below, the Court GRANTS Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Plaintiff, Rosalind Santorocco, worked as a part-time travel agent for Defendant, Chesapeake Holding Company, LLC, d/b/a World Travel Service ("WTS"), as an at-will employee for nearly six years before commencing this action. Plaintiff worked in the Defendant's Rockville office, which exclusively served the National Institutes of Health ("NIH"). She was the only part-time travel agent in this office. Plaintiff missed a total of two to five days of work in June and July 2006, which she alleges stemmed from her medical condition. Plaintiff also contends that she discussed with her co-workers and immediate supervisor, Linda Grossman ("Grossman"), that she was experiencing heavy vaginal bleeding. However, she did not discuss her medical condition with Denny Lewis ("Lewis"), WTS president and chief executive officer. She also did not express the need to take FMLA leave, nor was she aware of

the need for extended leave, until August 22, 2006, after her doctor advised her to take extended leave to recover from her medical condition during an appointment the previous day.

According to Defendant, on August 17, 2006, Lewis decided to eliminate the part-time travel agent position in the Rockville office and to hire additional full-time agents because he determined that "average transaction times and complexity in bookings would increase" due to changes in NIH's travel policies. (Doc. No. 16, 4.) He contends that he discussed his decision "with Grossman, [manager of the Rockville office], Steven Groban, a WTS employee responsible for client services, and Peter Sapolsky, WTS's accounting manager, and concluded that it would be inefficient to add additional part-time travel agents at the Rockville Office." (Doc. No. 16, 4.) Lewis alleges that he wrote a letter addressed to Grossman, dated August 17, 2006, describing his decision, which stated that in order to adapt to changes at NIH, WTS would need to hire additional full-time employees and could "no longer afford the luxury of maintaining agent positions on a part-time basis." (Doc. No. 16, 4.) The letter further instructed Grossman to convert the only part-time position in the office to a full-time position, stating that it was better to offer the position to the current part-time employee first.

Joyce Taylor, an external consultant who provided human resources services to WTS, alleges that she reviewed the letter the same day, and in her billing invoice, described the letter as "Review letter to Roz from Denny," although the letter was addressed to Grossman. At his deposition, Lewis testified to transmitting the letter to Grossman and instructing her to discuss the matter with Plaintiff; however, he could not recall how he transmitted the letter to Grossman. Grossman testified that she informed Plaintiff of the elimination of her part-time position on August 18, 2006, and that Plaintiff purportedly accepted the full-time position. Plaintiff denies seeing the letter or having a discussion with Grossman about the termination of her part-time

agent position until Grossman referred to the letter in e-mail conversations exchanged between the two in October 2006, when Plaintiff was already on FMLA leave. Grossman contends that she then had several conversations with Taylor about Plaintiff's decision to accept the full-time position on August 21 and 22, which is reflected in Taylor's billing invoices for services performed in August 2006 and described as "Talk w/Linda re Roz to full-time." (Def.'s Ex. 5.)

On August 21, 2006, Plaintiff visited her doctor, who advised her to take a leave of absence from work to attend to her medical needs. On August 22, 2006, Plaintiff informed Grossman that she needed to take leave under the FMLA for her medical condition and submitted a written request for her FMLA leave to begin on August 25, 2006. Plaintiff's FMLA leave actually commenced on August 24, 2006, and she submitted her medical certification form on August 31, 2006, indicating that she needed twelve (12) weeks of leave. Meanwhile, WTS hired Claudia Perez to a full-time travel agent position in the Rockville office on August 28, 2006. According to Defendant, it deferred hiring anyone else as a full-time agent in expectation of Plaintiff's return to that position after her FMLA leave expired.

During Plaintiff's leave, a fellow travel agent in the Rockville office called to check on Plaintiff and asked when she might return to work. Moreover, beginning October 3, 2006, Grossman and Plaintiff had several e-mail exchanges discussing Plaintiff's obligation to keep WTS informed of her status, checking on her well-being, and inquiring about when Plaintiff could return to work. During these e-mail exchanges, Plaintiff and Grossman were able to set Plaintiff's tentative return date as October 17, 2006, and Grossman explained that the office was very busy, stated that Plaintiff would return to work on a full-time schedule, and referred Plaintiff to the August 17, 2006, letter written by Lewis. Plaintiff expressed confusion about the change in her schedule and reiterated that her familial obligations prevented her from working a

3

full-time schedule and requested that she be permitted to return to her part-time position. In an e-mail dated October 4, 2006, Grossman again stated to Plaintiff that she had shown Plaintiff the letter from Lewis which explained that part-time travel agent positions had been eliminated and further indicated that Plaintiff was offered and accepted the full-time position, which is why Grossman did not hire additional full-time agents. The e-mail also states that after Plaintiff accepted the full-time position she then told Grossman about needing FMLA leave and that Grossman informed Plaintiff that she could not return to her part-time position because it had been eliminated. Plaintiff denies discussing the elimination of her part-time position or accepting a full-time position prior to taking FMLA leave. In a series of three follow-up e-mails dated October fourth, sixth, and twelfth, Plaintiff once again inquired if she would have her part-time position upon her return. Finally, in an e-mail dated October 13, 2006, Grossman explained that the part-time position had been eliminated out of business necessity, reminded Plaintiff that she had accepted a full-time position, and stated that the company looked forward to Plaintiff's return, especially due to the workload.

Plaintiff's physician cleared her to return to work as of November 17, 2006; however, Plaintiff did not report to work on November 17, 2006. In two letters, dated December fourth and thirteenth, WTS extended the deadline for Plaintiff to return to work. After Plaintiff failed to report to work on the final deadline, WTS terminated her employment. On November 14, 2008, Plaintiff filed a complaint alleging that Defendant violated the FMLA by "attempting to coerce Plaintiff to return to work while on FMLA leave"[1] and by "failing to restore [her] upon the conclusion of her FMLA leave, to her original position, or [its equivalent]." (Compl. ¶¶ 31, 32.)

---

[1] Plaintiff explains that she is not pursuing a claim based on her employer's alleged coercion of her to return to work as a separate claim because she believed there is insufficient precedent to bring this claim individually. However, she intends to use her coercion claim to bolster her claim for punitive damages.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## **ANALYSIS**

The FMLA provides that an eligible employee is entitled to twelve (12) weeks of leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D) (2006). As stated by this Court,

> The core requirements for triggering an employer's obligations [under the FMLA] are a *serious health condition* and *adequate communication,* meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply. *See* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302-.303. When timely and adequate

>communication is not given, the protections of the Act do not apply, even if the employee in fact has a serious health condition.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 515-16 (D. Md. 2008). There are two substantive rights, referred to as prescriptive rights, under the FMLA, which are the entitlement of eligible employees to twelve weeks of leave per calendar year and restoration to their pre-FMLA position, or its equivalent, upon returning to work. 29 U.S.C. §§ 2612, 2614 (2006). The Fourth Circuit explained that allegations that an employer violated either of these prescriptive rights "are known as 'interference' or 'entitlement' claims," and are brought under § 2615(a)(1). *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). Under § 2615(a)(1), "it shall be unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." The court in *Yashenko* also explained that the FMLA provides "proscriptive provisions that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA," which are brought under § 2615(a)(2) and are known as "'retaliation' or 'discrimination' claims." *Id.* Section 2615(a)(2) provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

The Fourth Circuit analyzes claims that an employer failed to restore an employee to his or her pre-FMLA position under the interference theory, and interprets claims that the employer discharged an employee for exercising a substantive right provided under the FMLA, including taking leave permitted under FMLA, as a retaliation claim. *Yashenko*, 446 F.3d at 547, 550-51 (analyzing plaintiff's claim that defendant's reason for eliminating plaintiff's pre-FMLA position was illegitimate as an interference claim and plaintiff's allegation that he was terminated for engaging in a protected activity, namely "taking FMLA," as a retaliation claim). The court in

*Blankenship v. Buchanan General Hospital*, explained that other courts, including the Fourth Circuit, have interpreted the language of 29 C.F.R. § 825.220(c) as creating a cause of action for retaliation where an employee alleges that he or she was discharged for taking FMLA leave. 140 F. Supp. 2d 668, 672 (W.D. Va. 2001) (citing cases from the First, Fourth, and Tenth Circuits). The primary difference between these two theories is a retaliation claim requires the plaintiff to show the employer's adverse employment decision was based on retaliatory or discriminatory motive or intent, while motive is largely irrelevant when analyzing an interference claim. *Bosse v. Balt. County*, No. PWG-09-050, 2010 WL 816633, at *10 (D. Md. Mar. 10, 2010). The particulars of each standard are outlined below.

Plaintiff's Complaint does not specify under which theory or which section of the FMLA she is attempting to bring her claim. In relevant part, the Complaint alleges that Defendant violated the FMLA "by attempting to coerce Plaintiff to return to work while on FMLA leave" and by "failing to restore [her] upon the conclusion of her FMLA leave, to her original position, or [its equivalent]." (Compl. ¶¶ 31, 32.) At the hearing, Plaintiff clarified that she was only pursuing her claim under the interference theory. Nevertheless, because both parties have discussed the substance of a claim for retaliation, the Court will briefly discuss it below.

### A. Interference Theory

As stated above, § 2615(a)(1) prohibits an employer from interfering with, restraining, or denying the exercise of rights under the FMLA, often labeled as an interference claim. In order to make out a claim under the interference theory, a plaintiff must show by a preponderance of the evidence that "she is entitled to the FMLA benefit . . . and that her employer interfered with or denied that benefit . . .," which resulted in prejudice to the plaintiff. *Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 924 (4th Cir. 2007); *Blankenship*, 140 F. Supp. 2d at 672 (citation omitted). Actionable interference exists where the employer "refus[ed] to authorize FMLA

leave," "discourage[ed] an employee from using such leave," and "us[ed] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions. *Bosse*, 2010 WL 816633, at *7 (citation omitted). Prejudice is established, inter alia, when "the employee is denied 'employment, reinstatement, [or] promotion." *Id.* However, the Fourth Circuit, among other circuits, has held that the right to restoration is limited. *Yashenko*, 446 F.3d at 549 ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." (quoting 29 C.F.R. § 825.216(a))).

The employee unquestionably bears the burden to prove that she is entitled to FMLA leave; however, the Fourth Circuit has not yet resolved whether the "explicit language of [29 C.F.R. § 825.216(a)] validly shifts the ultimate burden of proof to the employer to establish the limitations on its obligations to restore the employee." *Id.* at 549. Regardless of which party bears the ultimate burden of proof on this issue, under Fourth Circuit precedent, to avoid liability the employer "must be able to show that the employee would not otherwise have been employed at the time reinstatement is requested." *Yashenko*, 446 F.3d at 547 (citing 29 C.F.R. § 825.216(a)). Thus, it appears that the Court should focus its attention on evidence either supporting or refuting a claim that the employer "would not have retained the employee," at that position, or its equivalent, even if "the employee had not been on FMLA leave." *See Yashenko*, 446 F.3d at 547. In other words, although motive for the employment decision is largely irrelevant, the evidence must show that the employer did not make the employment decision because the employee took FMLA leave.

Several cases in the Fourth Circuit, and others, have granted summary judgment to employers who demonstrated that the elimination of an employee's position was the result of a

reorganization of a company or unsatisfactory performance of the employee. *See e.g.*, *Yaskenko*, 446 F.3d at 550 (granting summary judgment where defendant provided sufficient evidence that the decision to eliminate plaintiff's position was part of a legitimate reorganization of the company and was made prior to the commencement of plaintiff's leave); *Jordan v. Radiology Imaging Assocs.*, 577 F. Supp. 2d 771, 786 (D. Md. 2008) (granting summary judgment where defendant provided substantial evidence that demonstrated the elimination of plaintiff's position was part of a reduction in force); *Ahmarani v. Sieling & Jones, Inc.*, 211 F. Supp. 2d 658 (D. Md. 2002) (granting summary judgment where testimony of defendant's agents and evidence that a new candidate was interviewed for plaintiff's position four days prior to plaintiff's request for FMLA leave indicated a strong showing that defendant decided to replace plaintiff prior to plaintiff's leave); and *Patterson v. Alltel Info. Serv., Inc.*, 919 F. Supp. 500, 505 (D. Me. 1996) (finding the evidence undisputedly showed that defendant had made the decision to replace plaintiff three weeks prior to the request for FMLA leave and that "only the timing of the final decision to replace him is relevant" to the interference claim, regardless of when the decision was implemented). Thus, absent some strong evidence to the contrary, courts have granted summary judgment where the employer has provided evidence by way of consistent sworn testimony or documentation that tends to show that the employer made the decision prior to the request for FMLA leave, especially when coupled with other evidence supporting the proffered reason, such as hiring new employees or offering another position to the plaintiff.

Plaintiff argues that the proffered reason for the decision and the timing of the Defendant's decision to eliminate her part-time agent position is in dispute. She argues that because she had previously discussed some symptoms with her supervisor and had missed a few days of work in the months prior to her request for FMLA leave that she actually qualified for

FMLA leave prior to her formal request. She contends that the Defendant eliminated her position because she had previously missed work due to her medical condition and anticipated that she would take FMLA leave. Further, Plaintiff contends that the Defendant's agents' failure to adequately articulate the reason for the elimination of her position during their deposition testimony and their inability to explain why additional part-time positions were not sufficient to address the alleged increased processing times could lead a reasonable jury to infer that Plaintiff's position was eliminated because she took FMLA leave. Plaintiff also argues that there is a dispute as to when the decision to eliminate her position occurred. In support, Plaintiff points to the five-day interval between the alleged decision and her request for leave, as well as the lack of a verifying time stamp on the letter explaining the elimination of her position. Moreover, Plaintiff contends that the letter's failure to refer to her by name even though she was the only person in the office affected by the decision, and Taylor's mistaken description of the review of Lewis' letter concerning the decision in her billing invoice, somehow raises a question about whether the decision was made prior to her request for leave. Essentially, Plaintiff alleges that the Defendant must have backdated the letter to make it appear that it made the decision to eliminate part-time agent positions prior to her requesting leave.

However, Plaintiff offers no substantial evidence to refute the Defendant's proffered reason for the elimination of the part-time position or to support her assertion that the decision was made because she requested FMLA leave. Instead, she attempts to create a genuine dispute of material fact by offering speculations and inferences concerning the timing of the decision to eliminate part-time agent positions. First, as this Court held in *Rodriguez*, mere notice that the employee is sick without details about the nature of and seriousness of the illness is insufficient to indicate to the employer that the protections of the FMLA may apply. Plaintiff's contention

that her immediate supervisor knew about some of her symptoms and that she missed a few days of work does not support her argument that Defendant terminated part-time agent positions in anticipation of her taking leave because there is no showing that any of the Defendant's agents knew the extent of her medical condition to alert Defendant that the FMLA could be invoked. In any event, Plaintiff has not provided any evidence showing that Lewis, who made the decision to eliminate Plaintiff's part-time position, was aware that Plaintiff had experienced symptoms indicating that she was suffering from a serious medical condition prior to her request for FMLA leave. Thus, there is no evidence supporting Plaintiff's contention that her part-time agent position was eliminated in anticipation of her taking FMLA leave.

Moreover, Plaintiff merely criticizes the Defendant's elimination of part-time agent positions, arguing that the Defendant could have hired additional part-time agents to accommodate an increased workload. However, as discussed in *Jordan*, the Plaintiff's hindsight observations that additional part-time agents could have effectively addressed the increased workload and her criticism of the efficacy of the reorganization does not obligate the Defendant to restore her to a position that no longer exists. The Court is reminded that regardless of its personal beliefs about an employer's decision, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998) (citation omitted).

On the other hand, Defendant has provided a strong showing that its decision to eliminate part-time agent positions was part of a reorganization and decided prior to any indication that Plaintiff would need to take FMLA leave. Defendant has offered the sworn deposition testimony and declarations of several of its agents, including Lewis, Grossman, and Taylor, to show that it

made the decision prior to Plaintiff's request for leave. Moreover, Defendant provided invoices from Taylor, which includes a notation that she reviewed a letter concerning the decision on August 17, 2006, and had conversations with Grossman about converting Plaintiff to a full-time position, which suggests that there was some discussion about this decision before Plaintiff requested leave. In addition, Defendant hired a full-time agent on August 28, 2006, and refrained from hiring any other full-time agent in expectation of Plaintiff taking this position after her FMLA leave expired. Plaintiff did not accept the Defendant's offer of a full-time position. Lastly, Defendant contends it has not hired part-time travel agents in the Rockville office since its decision to terminate such positions. All of this evidence, when compared to Plaintiff's mere speculations (which are insufficient to overcome summary judgment), convinces the Court that there is no genuine dispute of material facts that Plaintiff would not have been entitled to the part-time position had she not been on FMLA leave. Accordingly, summary judgment is granted as to the interference claim.

### B. Retaliation Theory

The Fourth Circuit analyzes FMLA retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Yashenko*, 446 F.3d at 550-51. Accordingly, to succeed on a retaliation claim the plaintiff "must first make a prima facie showing 'that [she] engaged in a protected activity, that the employer took adverse action against 'her,' and that the adverse action was causally connected to the plaintiff's protected activity.'" *Id.* at 551. Upon providing evidence sufficient to establish a prima facie case for retaliation, the burden shifts to the defendant to show a legitimate, non-discriminatory business reason for the adverse employment decision. *Id.* The plaintiff is then charged with establishing that the defendant's proffered explanation is pretextual. *Id.* As explained above, the Fourth Circuit held that taking FMLA leave is a protected activity under the FMLA. *Id.* Moreover, the Fourth Circuit explained that

12

close temporal proximity between the adverse employment decision and the protected activity "'satisfies the less onerous burden of making a prima facie case of causality.'" *Blankenship*, 140 F. Supp. 2d at 674. As explained in *Blankenship*, in order for the plaintiff to show that the defendant's proffered reason for the adverse employment action is pretextual "the weakness of the employer's explanation, standing alone, is not sufficient; rather, the employee must produce affirmative evidence of discriminatory motive or affirmative evidence that the employer's proffered explanation is simply unworthy of credence." *Id*.

Neither party disputes that the first two elements have been met. Defendant argues that the Plaintiff cannot demonstrate a causal link between its decision to eliminate the part-time agent positions in the Rockville office and the Plaintiff's FMLA leave because there is no evidence of a discriminatory or retaliatory motive. However, the five-day interval between the purported date of the Defendant's decision to eliminate part-time agent positions and the Plaintiff's request for FMLA leave satisfies the causality element of a retaliation claim. As discussed above, Defendant explained that it eliminated part-time agent positions to accommodate the needs of its sole client. Plaintiff argues that the proffered reason is pretextual because the timing of the letter is in dispute and because the Defendant eliminated her position because she missed a few days of work due to her medical condition.

However, as discussed above, the Defendant has offered strong evidence that its proffered reason to eliminate the part-time agent position was indeed legitimate. Specifically, Defendant points to the deposition testimony and declaration of several of its agents, all showing that the president of WTS made the decision on August 17, 2006, and described his decision, along with his reasoning, in a letter dated the same day. Defendant further relies on the billing invoices of Taylor, which as Defendant argues, confirms that Lewis memorialized the decision in

a letter dated August 17, 2006, and that Grossman discussed the decision with and offered the Plaintiff a full-time position. In addition, there is no evidence that Lewis, as the sole decision maker of this employment action, knew that Plaintiff had suffered from any serious medical condition when he made the decision to eliminate Plaintiff's part-time agent position. Moreover, the Defendant represents that it hired a full-time agent shortly after its decision on August 28, 2006, and in fact, did not hire anyone else for a full-time position in expectation of Plaintiff's return to work, which indicates that Defendant actually intended to convert the part-time positions into full-time positions. Lastly, Defendant gave Plaintiff additional time to report to work after her leave expired before terminating her employment. Plaintiff has provided no evidence showing that Defendant held any discriminatory motive towards Plaintiff for taking medical leave, and other than her speculations, Plaintiff has not shown that Defendant's proffered reason is pretextual. Accordingly, the Court believes that summary judgment is appropriate with respect to Plaintiff's retaliation claim.

## **CONCLUSION**

For the reasons articulated above, the Court GRANTS Defendant's Motion for Summary Judgment. A separate Order shall follow this Memorandum Opinion.

|  |  |
|---|---|
|    June 10, 2010    |        /s/       |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |